UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
J & J SPORTS PRODUCTIONS, INC.,      :

                  Plaintiff,      :

    -against-                       :      REPORT & RECOMMENDATION

CARGIL DEHAVALEN, et ano.,           :      06 Civ. 1699 (JGK)(MHD)

            Defendants.      :
-----------------------------------x


TO THE HONORABLE JOHN G. KOELTL, U.S.D.J.:


    Plaintiff J & J Sports Productions, Inc. ("J & J") commenced
this action on March 2, 2006, seeking damages from a barber shop
and its proprietor for the alleged theft of cable television
services in violation of the Communications Act of 1934, codified
as amended at 47 U.S.C. §§ 553 and 605. More specifically,
plaintiff alleges that Cargil Dehavalen and Total Care Salon
(collectively "defendants") unlawfully intercepted and received a
pay-per-view boxing event and displayed it to their patrons.
Defendants failed to answer the complaint, and accordingly a
default was entered against them.


    Plaintiff seeks statutory damages, attorney's fees, and costs.
For the reasons that follow, we recommend that plaintiff be awarded
$3,800.00 in statutory damages, $1,037.50 in attorney's fees, and
$450.00 in costs.

1

I. Procedural Background

The complaint was filed, and a summons issued, on March 2, 2006. Plaintiff served the summons and copies of the complaint on defendants, but they failed to answer or otherwise respond. Accordingly, on July 28, 2006 the District Court entered a default against defendants and referred the matter to me to conduct an inquest.

Following a pre-inquest conference with plaintiff's counsel on August 21, 2006, we authorized plaintiff to proceed by way of affidavits, and offered defendants the opportunity to serve and file responding papers. (See Order dated Aug. 21, 2006). Plaintiff duly submitted affidavits in support of its application for statutory damages, attorney's fees, and costs. Defendants have not submitted any opposition to the relief sought by plaintiff.

II. The Evidentiary Record[1]

The defendants' default requires that we accept as true the well-pled allegations of the complaint that are pertinent to

---

[1] In assessing damages, we rely on plaintiff's submitted affidavits and exhibits in lieu of an evidentiary hearing. See, e.g., Action S.A. v. Marc Rich & Co., 951 F.2d 504, 508 (2d Cir. 1991) (quoting Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)).

liability. See, e.g., Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 246 (2d Cir. 2004). We rely upon these allegations and the additional evidentiary facts proffered by affidavit.

Plaintiff was granted the right to distribute the July 16, 2005 Hopkins/Taylor program ("the event"), including all undercard bouts and the entire television broadcast, via closed circuit television and encrypted satellite signal. (Compl. ¶ 15). Plaintiff entered into agreements with various entities in the State of New York, allowing them to publicly exhibit the event to their patrons. (Compl. ¶ 16). Defendants did not contract with plaintiff for the rights to exhibit the event. (Aff. of Joseph Gagliardi, sworn to May 9, 2006 ("Gagliardi Aff."), at ¶ 6).

Plaintiff hired independent auditors to identify establishments that were unlawfully exhibiting the event. (Gagliardi Aff. ¶ 4). Prior to visiting the establishments, the auditors were given a list of the locations that were authorized to exhibit the program. (Id. at ¶ 5). On July 16, 2005, defendants intercepted and received the signal for the event without authorization. (Id. at ¶¶ 7-8; Compl. ¶ 19). Defendants then broadcast the event to the patrons within the barber shop, located at 103 West 145th Street in Manhattan. (Gagliardi Aff. ¶ 7).

The auditor who visited the defendant barber shop on the night of the event prepared an affidavit dated August 9, 2005, stating that during his visit he observed a telecast of a portion of the undercard of the event. (Gagliardi Aff. Ex. C). According to the auditor, he observed one television set and twelve people in the barber shop, whose capacity he estimated to be thirty. (<u>Id.</u>) The auditor paid no charge to enter the establishment. (<u>Id.</u>)

## III. Damages Under the Communications Act

### A. General Criteria for Statutory Damages

Sections 553[2] and 605[3] of Title 47 of the United States Code both prohibit the unauthorized interception and reception of cable programming services. <u>See</u>, <u>e.g.</u>, <u>Int'l Cablevision, Inc. v. Sykes</u>, 75 F.3d 123, 133 (2d Cir. 1996). When a court determines that a defendant's conduct has violated both sections, the plaintiff is entitled to only one, non-duplicative recovery. <u>See</u>, <u>e.g.</u>, <u>Sykes</u>,

---

[2] 47 U.S.C. § 553(a)(1) provides in pertinent part: "No person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." <u>Id.</u>

[3] 47 U.S.C. § 605(a) provides, <u>inter alia</u>, that: "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." <u>Id.</u>

75 F.3d at 127; <u>Time Warner Cable v. Barnes</u>, 13 F. Supp. 2d 543, 548 (S.D.N.Y. 1998).  The plaintiff may elect to recover damages under section 605 since it authorizes a higher damages award. <u>See</u>, <u>e.g.</u>, <u>Sykes</u>, 75 F.3d at 127; <u>Barnes</u>, 13 F. Supp. 2d at 548.

J & J has elected to seek statutory damages under section 605. Section 605 permits the award of statutory damages ranging from $1,000.00 to $10,000.00, <u>see</u> 47 U.S.C. § 605(e)(3)(C)(i)(II), with an enhancement of damages up to as much as $100,000.00 for violations committed "willfully and for purpose of direct or indirect commercial advantage or private financial gain." § 605(e)(3)(C)(ii).

B. <u>The Calculation of Damages</u>

The measurement of damages is within the broad discretion of the District Court. <u>See</u>, <u>e.g.</u>, <u>Time Warner Cable v. Googies Luncheonette, Inc.</u>, 77 F. Supp. 2d 485, 489 (S.D.N.Y. 1999) (noting that section 605 does not give guidelines for assessing statutory damages, "relying instead on the discretion of the court"). The court may impose a damage award based on what the "court considers just." § 605(e)(3)(C)(i)(II). Among the factors courts cite when determining what is "just" are "the pecuniary loss sustained by the victim as a result of the offense, the financial resources of the

defendant, . . . the financial needs and earning ability of the defendant . . . as well as the burden that a damages award would impose on the defendant relative to the burden alternative relief would impose." Entm't by J & J, Inc. v. Ramsarran, 2002 WL 720480, at *2 (E.D.N.Y. Mar. 11, 2002) (citations omitted). In applying these factors, courts have developed two approaches for determining statutory damages under section 605. See, e.g., Googies Luncheonette, 77 F. Supp. 2d at 489. One is to calculate the award of damages based on the number of patrons in the establishment at the time of the violation. See id. at 489-90 (citing cases in which courts awarded between $30.00 and $300.00 per patron, and recommending a $50.00 per patron award). The other is to award a flat sum for damages. See id. at 490 (citing cases); see also Garden City Boxing Club, Inc. v. Deblasio, 2003 WL 22144395, at *4 (S.D.N.Y. Sept. 8, 2003) (awarding $5,000.00); Kingvision Pay-Per-View, Ltd. v. Jasper Grocery, 152 F. Supp. 2d 438, 442 (S.D.N.Y. 2001) (same).

In support of its application for damages, plaintiff has proffered some evidence of the number of patrons present the night on which defendants exhibited the event and the extent of the revenues it lost as a result of defendants' failure to obtain a license for the program. The plaintiff's affiant reports that he observed twelve "people" in the barber shop at that time. Although

6

this wording does not clearly indicate whether this is a count of patrons or all persons on the premises, including staff, we infer that plaintiff's estimate refers to the number of patrons. Given this record, we choose to use the per-patron approach for calculating damages in this case.

There is no strict formula for calculating the dollar amount per patron. See, e.g., Googies Luncheonette, 77 F. Supp. 2d at 489-90; compare New Contenders, Inc. v. Diaz Seafood Corp., 1997 WL 538827, at *2-3 (S.D.N.Y. Sept. 2, 1997) (awarding $300.00 per patron and taking into account defendant's profits), with Garden City Boxing Club v. Bello, 2005 WL 2496062, at *3 (E.D.N.Y. Sept. 20, 2005) (awarding $54.95 per patron). Although admittedly somewhat arbitrary, we find that $150.00 per patron is reasonable and sufficient to punish and deter[4] defendants from future violations of the Communications Act. This dollar amount takes into account plaintiff's lost revenue[5] as well as any profits gained by defendants as an indirect result of their unlawful acts. Since there were twelve people in the establishment during the time at

---

[4] Deterrence is a pertinent consideration. See, e.g., Sykes, 75 F.3d at 132 (quoting 130 Cong. Rec. S14285 (daily ed. Oct. 11, 1984) (statement of Sen. Packwood)); see also Garden City Boxing Club v. Andino, 2006 WL 1653146, at *3 (S.D.N.Y. June 15, 2006).

[5] Had defendants purchased the license from plaintiff to broadcast the event, they would have paid $1,000.00 in fees to plaintiff.(Pl.'s Mem., dated September 5, 2006, Ex. B).

which the event was broadcast, a base award of $1,800.00 in statutory damages is warranted.

Pursuant to section 605(e)(3)(C)(ii), plaintiff also seeks enhanced statutory damages of up to $100,000.00, contending that defendants wilfully violated the statute for commercial advantage. "Willfulness" has been defined by the Supreme Court as "disregard for the governing statute and an indifference to its requirements." Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 127 (1985); see id. at 127 n.20; see also Kingvision Pay-Per-View, Ltd. v. Lalaleo, 429 F. Supp. 2d 506, 515 (E.D.N.Y. 2006) (applying the definition in assessing damages pursuant to section 605). Courts use a variety of factors in determining whether a defendant's willful conduct calls for enhanced damages. These factors include "repeated violations over an extended period of time; substantial unlawful monetary gains; significant actual damages to plaintiff; defendant's advertising for the intended broadcast of the event; [and] defendant's charging a cover charge or charging premiums for food and drinks." Kingvision Pay-Per-View, Ltd. v. El Rey Del Bistec y Caridad, Inc., 2001 WL 1586667, at *2 (S.D.N.Y. Dec. 12, 2001).

J & J's request for $100,000.00 in enhanced damages would overcompensate plaintiff and would likely put a small establishment

such as Total Care Salon out of business. Further, there has been no proof that defendants (1) had pirated other events, (2) advertised the fight, (3) imposed a cover charge, or (4) offered food and drinks, much less charged a premium for them. Nonetheless, defendants' conduct was willful since they had to take affirmative action to intercept J & J's satellite signal and exhibit the event, and presumably did so for commercial advantage, that is, to attract customers or promote community goodwill. Taking all these factors into account, we recommend that the damage award be increased by $2,000.00 for willful violation of the Communications Act. This amount, together with the $1,800.00 calculated based on the number of patrons, is sufficient to redress whatever harm was caused by defendants' activities, and to deter them and others from future violations.

The complaint names both the establishment and its principal as defendants. Since this case involves a unitary violation of the statute, defendants should be held jointly and severally liable for a single award of $3,800.00 in statutory damages.

IV. Attorney's Fees and Costs

Plaintiff is entitled to reasonable attorney's fees and costs expended in its prosecution of the action. 47 U.S.C. §

605(e)(3)(B)(iii). In support of its application for fees, plaintiff has submitted an affidavit of its attorney, who reports that she billed a total of 4.25 hours at $200.00 per hour and that a paralegal worked for 2.5 hours at a rate of $75.00 per hour. (Aff. of Julie Cohen Lonstein, Esq., sworn to June 7, 2006 ("Lonstein Aff."), at ¶ 4). The resulting request for $1,037.50 is comparable to awards of attorney's fees in similar cases and is plainly reasonable. See J & J Sports Prods., Inc. v. Estevez, 2006 WL 3206123, at *2 (S.D.N.Y. Nov. 6, 2006) (awarding $951.75 in attorney's fees and finding rates of $200.00 per hour for an attorney and $75.00 per hour for a paralegal reasonable); J & J Sports Prods., Inc. v. Louisias, 2006 WL 1662608, at *6 (E.D.N.Y. May 16, 2006) (awarding $1,149.00 in attorney's fees).

Plaintiff also seeks reimbursement for costs in the amount of $800.00, which includes $250.00 for filing fees, $200.00 for service of process, and $350.00 for an investigation fee. (Lonstein Aff. ¶ 3). The costs for filing fees and service of process are reasonable and should be awarded. As for the investigator's fee, courts are split over whether that cost is recoverable. Compare Kingvision Pay-Per-View Ltd. v. Cardona, 2004 WL 1490224, at *4 (S.D.N.Y. June 30, 2004) ("There is no provision for a prevailing party to be awarded the cost of its investigator."), and Joe Hand Promotions, Inc. v. Soto, 2003 WL 22962810, at *2 (S.D.N.Y. Dec.

17, 2003) ("[T]here is no authority to award 'investigative fees' as costs."), with <u>Kingvision Pay-Per-View Ltd. v. Autar</u>, 426 F. Supp. 2d 59, 67 (E.D.N.Y. 2006) (noting that an award of investigative costs is authorized under section 605(e) but must be supported by documentation as to the investigator's rate, qualifications, and time spent), and <u>Garden City Boxing Club, Inc. v. Guzman</u>, 2005 WL 1153728, at *4 (S.D.N.Y. Apr. 26, 2005) (awarding investigator's fee as part of costs without discussion). Because there is no clear legal basis for an award of investigation fees as an element of costs and because plaintiff failed to submit in its affidavit the total number of hours spent on the investigation and the hourly investigative rate, I recommend that plaintiff's request for the investigation fee be denied.

<u>CONCLUSION</u>

In sum, I recommend that judgment be entered against defendants, jointly and severally, in the amount of $3,800.00 in statutory damages, $1,037.50 in attorney's fees, and $450.00 in costs, for a total award of $5,287.50.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall

be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable John G. Koeltl, Room 1030, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e); Thomas v. Arn, 474 U.S. 140, 150-52 (1985); DeLeon v. Strack, 234 F.3d 84, 86 (citing Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)).

Dated: New York, New York
       January 9, 2007

RESPECTFULLY SUBMITTED,

MICHAEL H. DOLINGER
UNITED STATES MAGISTRATE JUDGE

12

Copies of the foregoing Report and Recommendation have been mailed this date to:

Julie Cohen Lonstein, Esq.
Lonstein Law Office, P.C.
1 Terrace Hill, P.O. Box 351
Ellenville, New York 12428

Total Care Unisex Salon
101 W. 145th Street
New York, New York 10039

Cargil Dehavalen
145 S. 4th Avenue, Apt. 2B
Mount Vernon, New York 10550